IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TIMOTHY JOEL GRAHAM                                                              PLAINTIFF

VS.                                                      CIVIL ACTION NO.: 2:15-cv-00093-FKB

SHERIFF ALEX HODGE, ET. AL                                                     DEFENDANTS

**ORDER**

Timothy Joel Graham, a state prisoner, brought this action pursuant to 42 U.S.C. § 1983. Graham alleges a myriad of constitutional violations during his pre-trial confinement at the Jones County Adult Detention Center ("JCADC"). Before the Court are four motions: Defendants' motion for summary judgment [74], Graham's motion for summary judgment [77][1], and two motions to strike, one by Defendants [79][2] and one by Graham [80].

Graham makes a variety of claims against Defendants and JCADC staff. The vast majority of Graham's claims fail, however, because he did not exhaust available administrative remedies prior to filing suit. Of the three claims he potentially exhausted, each fails to allege actions by Defendants which would amount to a constitutional violation. Accordingly, Defendants are entitled to summary judgment on all claims.

**I. Graham's allegations.**

Graham contends that his conditions of confinement while incarcerated at JCADC were unconstitutional. In support of his claim, he cites the jail's assignment of multiple inmates to a

---

[1] Motion [77] is more of a response in opposition to motion [74] than a stand-alone motion for summary judgment. However, it is styled as a motion for summary judgment and requests summary judgment in favor of Graham. [77] at 1, 7. Accordingly, the Court will consider [77] as both a motion for summary judgment and a response in opposition to [74].

[2] As a preliminary matter, the Court denies motion [79], Defendants' motion to strike [77]. While Plaintiff filed document [77] several weeks past the motion deadline, Defendants make no argument that considering it will cause them any type of prejudice. *See* [79] at 1-2. Accordingly, motion [79] is denied, and the Court will consider document [77].

1

cell, his sleeping on a mat on the floor,[3] cell lights being on for twenty-four hours per day, and cigarette and tobacco usage by the guards. [7] at 2-3; [27] at 2-3; [61] at 11-14. He alleges that the other inmates and the guards were too loud, that he was not given enough food, and that prison officials opened his legal mail. [8] at 1-2; [27] at 2-3. Graham claims that Defendants Hare, Hodge, and Johnson failed to respond to his complaints regarding his cell assignments and the overcrowding.[4] [61] at 7, 14, 18-19.

Graham also makes the following allegations relating to specific incidents which he contends occurred while he was incarcerated at JCADC:

(1) Defendants Howard and Eubanks used excessive force against him by tasing him, macing him, placing him in a restraint chair, and slamming his head against the back of the chair. [16-2] at 1; [61] at 9, 14-15; [7] at 4.

(2) Defendant Howard failed to protect him from harm by forcing him to stay in a cell with an inmate who eventually assaulted him. [61] at 9-10; [27] at 4.

(3) Defendants James, Gainey, Wilkinson, Grayson, and Howard took pictures of his legal documents during a cell search. [16] at 1; [61] at 19-20.

(4) Defendants punished him worse than other inmates after they found two shanks in his cell during a search, and that the punishment amounted to an equal protection violation. [19] at 1-2; [61] at 24-25.

---

[3] Graham contends that he was forced to sleep on the floor. Graham does not allege, however, that he did not have a mattress or sleeping pad during this time period. The only time he makes reference to actually having to sleep on the bare ground was when he was placed in a holding cell for twelve hours in September 2015. *See* [16] at 1-2. He makes a request for an extra mat in April 2015, which implies that he had a mat at that time. [74-3].
[4] Graham, however, admits that Defendant Hodge did "not necessarily" do anything to violate his constitutional rights. [61] at 7.

(5) Defendant Eubanks placed him in a holding cell without a mattress, blanket, or proper toilet (the cell contained a grated drain pipe for use as a toilet) for twelve hours. [16] at 1-2; [17] at 2; [61] at 29.

(6) Officers retaliated against him for filing this suit by denying him access to razors, shaving cream, toothpaste, and by "screaming and hollering" at him. [18] at 2-3; [61] at 19.

(7) Defendant Brown, on September 13, 2015, used a knife and "stab[bed Graham] in the face between [his] eyes." [61] at 23; [17] at 3. He claims that as a result he bled, developed a scab, and has a "little small pink scar" that "you can't really see . . . unless you're standing right up on [him]." [61] at 27.

Graham made additional claims against two former defendants, Pamela Adkins and Carroll Johnston. However, the Court previously dismissed those claims. *See* Omnibus Order [53].

## II. The majority of Graham's claims must be dismissed for failure to exhaust available administrative remedies.

42 U.S.C. § 1997(e) requires that an inmate bringing a civil rights action in federal court first exhaust available administrative remedies. *Whitley v. Hunt*, 158 F.3d 882 (5th Cir. 1998). This exhaustion requirement applies to all inmate suits about prison life. *Porter v. Nussle*, 534 U.S. 516 (2002). The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory and non-discretionary. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012).

In support of their motion, Defendants submit the affidavit of Defendant David Hare. [74-5]. Hare states that he is a captain at JCADC, manages much of its day-to-day operations, and is responsible for and has access to all records kept at the facility. *Id.* at 1. He confirms that JCADC maintains an inmate grievance system which allows for inmates to submit a written grievance and receive a written response from prison officials within seven days. *Id.* Hare testifies that after review of the relevant files, he concluded that Graham never submitted grievance forms:

. . . pertaining to the following matters and alleging: (1) overcrowding in the jail, (2) that he was underfed or not receiving proper nutrition at the jail, (3) that the lighting and noise in administrative segregation was excessive, (4) that he was denied yard call, (5) that the jail failed to protect him, (6) that he was denied access to the courts, (7) that his legal documents were photographed or photocopied, (8) that he was subject to shakedowns, (9) that he was placed in the hole for fourteen hours, and (10) that he was subjected to excessive force by Sgt. Jack Eubanks and Sgt. Lucille Howard.

[74-5]. Hare's affidavit, along with documents submitted by Defendants, and documents submitted by Plaintiff, establish that Graham, at most, filed only four grievances relating to allegations made in his complaint and testimony at the *Spears* hearing.[5]

On April 30, 2015, Graham submitted a grievance for having to sleep on a mat on the floor, claiming that it was exacerbating preexisting back and leg problems. [74-3]. He requested an extra mat. *Id.* Prison officials responded that they did not have enough mats to give him an extra. *Id.*

On September 23, 2015, Graham submitted a grievance in which he complained that he received inequitable punishment from prison officials relating to two shanks discovered in his cell. [77] at 17. He claims that he was given a harsher penalty than other inmates despite similar circumstances. *Id.*

On October 16, 2015, Graham submitted a grievance complaining that officers smoking in the nearby sally port and on the jail's front porch were causing him health problems. [77] at 4. He requested that officers no longer be allowed to bring tobacco products of any kind to the jail. *Id.*

The Court finds that Graham appropriately exhausted these three grievances. Defendants are entitled to summary judgment on all other claims for Graham's failure to exhaust available administrative remedies.

---

[5] However, Defendants attach excerpts from a deposition they took of Graham, which indicate that fifteen grievance forms were made a part of the record at that deposition. [74-4]. Defendants submitted two grievance forms as part of their motion for summary judgment. [74-3], [74-5]. Graham responded by submitting two additional grievance forms. [77] at 4, [77] at 17.

Graham contends that he submitted a fourth grievance, dated September 18, 2015. That grievance alleges that Defendant Brown used a spring-loaded knife on Graham, hitting him in the face. [74-5] at 4. Defendant Hare claims in his affidavit that he never received this grievance form and only saw it for the first time as part of the instant litigation. *Id.* at 2. Defendants claim that Graham likely filled out this grievance form after filing this litigation to support his claim. [75] at 7-9.

Even if Graham actually submitted the September 18 grievance, the Court finds that Graham did not properly exhaust his available administrative remedies prior to filing this claim against Defendant Brown. Graham signed his motion to amend to add this claim on September 20, 2015, only two days after filing the September 18 grievance. *See* [17]. The motion was actually received for filing on September 23, 2015. *Id.* Because JCADC's grievance procedures permit officials seven days to respond, the only way Graham could have exhausted his claim prior to filing his motion would have been for him to have already received a response from jail officials. Graham presents no evidence that officials ever responded to the grievance, let alone prior to filing his motion to amend. Thus, Graham filed this claim in the Court prior to exhausting his available administrative remedies.

District courts once had discretion to overlook such an issue, permitting the inmate to amend his complaint without having first exhausted his available remedies, so long as he exhausted said remedies post-filing. *See Gonzalez v. Seal,* 702 F.3d 785, 787 (5th Cir. 2012)(discussing *Underwood v. Wilson*, 151 F.3d 292 (5th Cir.1998)). However, the Supreme Court issued two decisions, *Woodford v. Ngo*, 548 U.S. 81 (2006), and *Jones v. Bock*, 549 U.S. 199 (2007), which removed any such discretion. *See Gonzalez,* 702 F.3d at 787-88. In light of *Woodford* and *Jones*, the Fifth Circuit held:

> After *Woodford* and *Jones*, there can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. We thus hold that *Underwood* has been tacitly overruled and is no longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Gonzalez,* 702 F.3d at 788. The exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Accordingly, Defendants are entitled to summary judgment as to Graham's claims asserted in the September 18, 2015, grievance.

**III. Defendants are entitled to summary judgment on all remaining grievances.**

Graham's allegations relating to his sleeping conditions and the presence of cigarette smoke are both "conditions of confinement" claims. Pretrial detainees have a due process right not to be subjected to jail conditions that constitute punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). Conditions constitute punishment, and therefore violate the constitution, where they result in "serious deficiencies" in providing for the detainee's "basic human needs," and where their imposition is not reasonably related to a legitimate governmental interest. *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009).

Graham's allegations do not rise to the level of depriving him of basic human needs. Furthermore, Graham's evidence is insufficient to show that the conditions were so extended or pervasive that the Court can infer an intent by Defendants to punish him.

An inmate's claim that his sleeping mat is uncomfortable does not allege a constitutional violation. *See Conlin v. Thaler*, 347 F. App'x 983, 984 (5th Cir. 2009). Pretrial detainees do not

have a constitutional right to an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85–86 (5th Cir.1986). Absent a doctor's recommendation or prescription, a correctional facility's denial of an inmate's request for an extra sleeping mat does not amount to deliberate indifference to that inmate's medical needs. *See Maxwell v. Lowndes Cty. Adult Det. Ctr.*, Civil Action No. 1:08-cv-202-M-D, 2009 WL 3674655, at *2 (N.D. Miss. Nov. 3, 2009); *Evans v. Brouwer,* Civil Action No. 9:13-CV-302, 2017 WL 4216067, at *1 (E.D. Tex. Sept. 22, 2017)(collecting cases holding that a facility's denial of extra pillows or mattresses to an inmate does not constitute deliberate indifference to the inmate's serious medical needs absent medical instructions to the contrary).

With regard to his cigarette usage claims, Graham has failed to show that he was exposed to an unreasonably high level of environmental tobacco smoke ("ETS"), or that Defendants acted with deliberate indifference to his situation. *See Helling v. McKinney*, 509 U.S. 25, 36 (1993). Graham alleges that he has had to smell cigarette smoke from officers smoking on the jail's front porch and sally port. [77] at 4. He does not contend that officers smoked inside the jail or even near him. His allegations that the officers smoked in one of only two places at the facility suggests that JCADC officials took measures to limit inmate exposure to cigarette smoke. Graham has failed to show that his exposure to ETS was "so grave that it violates contemporary standards of decency to expose anyone unwilling to such a risk." *Helling,* 509 U.S. at 36.

Moreover, Graham's claims regarding tobacco usage at JCADC are very similar to another JCADC inmate's claims in *Hancock v. Hodge*, Civ. Action No. 2:15-cv-45-MTP (S.D. Miss.).[6] Hancock also alleged that officers at JCADC smoked on the jail's front porch and sally port, and that such amounted to a constitutional violation. *Hancock*, 2:15-cv-45-MTP, [62] at 11. Hancock

---

[6] Graham repeatedly states that he "uses the claims" in *Hancock* to support his claims in the instant case. [1] at 3; [7] at 3; [8] at 2. In fact, the plaintiff in *Hancock*, Gregory Hancock, writes a "declaration" in support of one of Graham's motions to amend his complaint. [19-2].

7

even contended that his jail cell shared the same exchange vent with the sally port, allowing cigarette smoke to directly enter his cell. *Id.* The *Hancock* court applied the *Helling* factors, finding that Hancock failed to show that he was exposed to high levels of ETS, or that the JCADC defendants were deliberately indifferent to a serious health risk. *Id.* The *Hancock* court found that JCADC had a policy of prohibiting inmates from smoking in the facility and had a policy banning officers from smoking in the facility with the exception of designated areas. *Id. Hancock* resulted in summary judgment being granted in favor of the JCADC defendants. *Id.* at 14. As in *Hancock*, Graham's tobacco usage claims do not amount to a constitutional violation.

Graham's next claim relates to his September 23, 2015, grievance. Graham contends that Defendants violated his constitutional rights by punishing him more severely than other inmates after they discovered two shanks in his cell. "Equal protection means that similarly situated persons are to receive substantially similar treatment from their government. To establish an equal protection violation, a plaintiff must introduce sufficient evidence ... that, compared with others similarly situated, the plaintiff was treated differently because of an improper consideration, such as his religion." *Marte v. Geo Grp. Inc.*, No. 1:14-CV-203-BL, 2015 WL 12632288, at *6 (N.D. Tex. Oct. 27, 2015). "To prove a cause of action under § 1983, the plaintiff must demonstrate that prison officials acted with a discriminatory purpose." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Graham has failed to submit sufficient evidence to avoid summary judgment in favor of Defendants with regard to his equal protection claim. He submits only his conclusory allegation that he received a different punishment than others as a result of this lawsuit. Graham admits that he was not the only inmate charged with a felony after being found in possession of a shank; his cellmate was also charged. [61] at 24-25. He provides paperwork showing that officials charged

him under Miss. Code Ann. § 97-37-5, which applies only to those previously convicted of a felony. *See* Miss. Code Ann. § 97-37-5(1); [77] at 16. He submits no evidence that any of the other inmates (at a facility which housed pre-trial detainees such as himself) were felons, and thus would even have been eligible to be charged under the statute.[7]

Accordingly, summary judgment in favor of Defendants is appropriate on each of Graham's three remaining claims.

## V. Conclusion

For the reasons stated above, the undersigned finds that Defendants are entitled to summary judgment on all claims. It is, therefore, ordered:

1. Defendants' Motion for Summary Judgment [74] is granted.
2. Plaintiff's Motion for Summary Judgment [77] is denied.
3. Defendants' Motion to Strike [79] is denied.
4. Plaintiff's Motion to Strike [80] is denied.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the Court will enter a seperate judgment dismissing this action with prejudice.

SO ORDERED, this the 13th day of March, 2018.

    /s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff indicates that the charge was later dropped and that the bond that resulted from the charge had no effect on his incarceration, as he was already unable to pay the bond of the original charge. [61] at 24-25.